UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUAL EMPLOYMENT            )
OPPORTUNITY COMMISSION,     )
                            )
        Plaintiff,           )
                            )   No. 17 C 6811
    v.                      )
                            )   Chief Judge Rubén Castillo
MIDWEST GAMING &            )
ENTERTAINMENT, LLC,         )
d/b/a Rivers Casino,        )
                            )
        Defendant.          )

## MEMORANDUM OPINION AND ORDER

The U.S. Equal Employment Opportunity Commission ("Plaintiff") brings this action on behalf of Donnan Lake ("Lake") against his former employer, Midwest Gaming & Entertainment, LLC d/b/a Rivers Casino ("Defendant"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (R. 1, Compl.) Shortly after the case was filed, Defendant moved for summary judgment based on the U.S. Court of Appeals for the Seventh Circuit's decision in *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1441 (2018). (R. 16, Def.'s Mot.) Plaintiff responded by filing a motion pursuant to Federal Rule of Civil Procedure 56(d), asserting that it cannot properly oppose Defendant's motion for summary judgment until it is permitted to conduct discovery. (R. 25, Pl.'s Mot.) For the reasons stated below, Plaintiff's Rule 56(d) motion is granted, and Defendant's motion for summary judgment is denied without prejudice.

### BACKGROUND

According to the complaint, Lake previously worked for Defendant as a "Slot Technician." (R. 1, Compl. ¶ 15.) He is alleged to be a "qualified individual with disability" as

defined by the ADA because he has cancer.[1] (*Id.* ¶¶ 13-14.) Defendant approved Lake to take medical leave through January 2016 to obtain treatment for his cancer. (*Id.* ¶ 15.) In January 2016, Lake requested a "reasonable accommodation" for his disability, namely, an "extension of medical leave through the beginning of March 2016 for an additional surgical treatment for his cancer." (*Id.* ¶ 16.) Defendant refused to provide this accommodation and instead terminated Lake's employment effective January 28, 2016. (*Id.* ¶ 18.)

Thereafter, Lake filed a charge of discrimination with Plaintiff alleging violations of the ADA. (*Id.* ¶ 7.) Plaintiff found "reasonable cause to believe that the ADA was violated" and engaged in an informal conciliation process with Defendant. (*Id.* ¶¶ 8-9.) After that process proved unsuccessful, Plaintiff on September 20, 2017, filed this action on Lake's behalf. (*Id.*) Defendant answered the complaint on November 20, 2017. (R. 14, Answer.) On that same day, Defendant filed a motion for summary judgment, arguing that Plaintiff's lawsuit is barred as a matter of law by *Severson*, which held that "an employee who needs long-term medical leave cannot work and thus is not a 'qualified individual' under the ADA." (R. 17, Def.'s Mem. at 1 (quoting *Severson*, 872 F.3d at 479 (emphasis omitted)).) Defendant argues that Lake had already been on leave for six months when he requested an additional two months of leave in January 2016, and, in Defendant's view, the "multimonth leave of absence" Lake requested was categorically "beyond the scope of a reasonable accommodation under the ADA." (*Id.* (quoting *Severson*, 872 F.3d at 479).)

In lieu of responding to the motion for summary judgment, Plaintiff filed a motion pursuant to Rule 56(d) arguing that it "cannot fairly and adequately respond to [Defendant's]

---

[1] The details of Lake's illness are not included in the complaint, but in its Rule 56(d) motion, Plaintiff asserts that Lake has had sarcoma, a rare form of cancer, for many years, and has undergone multiple courses of chemotherapy and multiple facial reconstructive surgeries, including having an eye and part of a facial bone removed. (R. 25, Pl.'s Mot. at 2.)

2

summary judgment motion without discovery." (R. 25, Pl.'s Mot. at 2.) Specifically, Plaintiff outlines several issues on which discovery is needed, including "[t]he job duties of the slot technician position and the manner in which they are performed"; the nature of "Lake's communications with [Defendant] regarding his leave, including whether [Defendant] considered or offered Lake any accommodation other than leave"; Defendant's "policies and practices regarding attendance, leave, and modified or light duty"; information about whether Defendant "provided leave to other slot technicians, the reasons for such leave, the length of any such leave, and how the job duties were covered for other slot technicians on leave"; and "[t]he identity of the decision-makers regarding Lake's termination and the specific reasons why they terminated Lake." (R. 25-1, Mrizek Decl. at 2.) Defendant opposes Plaintiff's motion, arguing that all of these matters are irrelevant in light of the Seventh Circuit's holding in *Severson*. (R. 26, Def.'s Resp. at 1, 5-16.)

## ANALYSIS

Rule 56(d)[2] grants the Court discretion to deny or delay consideration of a summary judgment motion and order discovery if the requesting party demonstrates that "it cannot present facts essential to justify its opposition" to summary judgment. *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017) (quoting FED. R. CIV. P. 56(d).) The Rule is "intended as a safeguard against a premature grant of summary judgment." *United States v. Navistar Int'l Corp.*, 240 F. Supp. 3d 789, 800 (N.D. Ill. 2017) (citation omitted). However, the Rule "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *OneBeacon Ins. Co. v. U.S. Foods, Inc.*, 304 F.R.D. 536, 539 (N.D. Ill. 2014) (citation omitted). A party invoking the protections of Rule

---

[2] Rule 56 was amended in 2010, and the current subsection (d) is substantially the same as the prior subsection (f). *See* FED. R. CIV. P. 56, advisory committee's note to 2010 amendments. Although some of the cases herein address Rule 56(f) rather than Rule 56(d), the analysis remains the same.

56(d) must explain in an affidavit or declaration precisely "how postponement of a ruling on the motion will enable it, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* at 540 (citation and internal alteration omitted). The Court should deny a Rule 56(d) motion "if the issues at stake are purely legal such that no facts could make a difference in the outcome of the case." *Hillshire Brands Co. v. Travelers Cas. & Sur. Co.*, No. 15 C 06859, 2016 WL 6892885, at *2 (N.D. Ill. Nov. 23, 2016).

Applying those standards, the Court concludes that Defendant's motion for summary judgment is premature. There can be no doubt that *Severson* undercuts Plaintiff's claim that Lake's request for leave, on top of the time off he had already received, was a "reasonable accommodation" under the ADA. *See Severson*, 872 F.3d at 479 ("[T]he term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA."). But, unlike Defendant, the Court does not believe that *Severson* forecloses this case entirely.

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). The Seventh Circuit has long held that determining whether an accommodation is "reasonable" is a fact-intensive inquiry. *See, e.g., A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018) ("Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the

needs of the parties." (citation omitted)); *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001) ("Whether a requested accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff."). The Court does not read *Severson* to overrule this long-standing principle, either explicitly or implicitly, and indeed, the Seventh Circuit reaffirmed this principle after *Severson*. *See A.H.*, 881 F.3d at 594. Additionally, *Severson* was decided on a fully developed record, and, although the court found the lengthy leave request made by the plaintiff unreasonable, the court recognized that a leave of absence can be a reasonable accommodation "in some circumstances." *Severson*, 872 F.3d at 481.

Because this case is still in the preliminary stages, Plaintiff has not had an opportunity to develop evidence in support of its position that Lake's request was reasonable under the circumstances. For instance, the record has not yet been developed regarding Lake's job duties as a "slot technician." While it may seem intuitive, the Seventh Circuit has declined to adopt a *per se* rule that regular presence at a job site is an "essential function" of every job for purposes of the ADA. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000) ("We need not go so far as to say that regular attendance is an essential function of every job . . . nor do we hold that an individual with erratic attendance can never be a qualified individual with a disability under the ADA." (emphasis omitted)); *see also Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 490 n.47 (7th Cir. 2014) (noting that although regular presence at a job site is an essential requirement of most jobs, there are "a few possible exceptions to this rule"). If Plaintiff can show that Lake's regular presence at his job site was not an essential function of the slot technician position, or that his absences were not excessive in relation to his duties, Plaintiff may be able to establish that granting Lake a short period of

5

additional leave was a reasonable accommodation in this particular case. *See Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998) ("[I]t is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job. Consideration of the degree of excessiveness is a factual issue well suited to a jury determination.").

Likewise, further factual development is needed to determine exactly who in the company made the decision to terminate Lake, and the precise reason for that decision.[3] *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) ("The facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts available to the decision-maker at the time of the employment decision."). Plaintiff should also be permitted to explore why the decision-maker terminated Lake outright rather than engaging in an interactive process to determine whether some other type of accommodation might have been made for him, such as job restructuring, or a part-time or modified work schedule. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (reversing summary judgment for employer and holding that "[a]fter an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." (citation and internal quotation marks omitted)). Although the record has not yet been developed regarding Lake's functional abilities during this period, Plaintiff states that Lake was formally released to return to work on March 1,

---

[3] Defendant submitted a declaration from Sakeena Shaw, its "Team Relations Manager," but Shaw was clearly not the one who terminated Lake because she did not start working for Defendant until May 2016—four months after Lake was terminated. (R. 18-1, Shaw Decl. ¶ 1.) Shaw's declaration does not reveal the identity of the decision-maker. The termination letter sent to Lake was signed by Michael Navarra, Defendant's "Risk & Safety Manager," although it is unclear whether he made the termination decision. (R. 19-1, Letter at 24.) The letter sent by Navarra was essentially a form stating that Lake had been terminated due to "attendance" and outlining his insurance benefits. (*Id.*)

2016—approximately five weeks after his termination—and suggests that he may have been able to perform work earlier than that. (R. 25, Pl.'s Mot. at 3, 9.) If Lake did not require an extended leave of absence at the time of his termination, he may be able to show that he was a "qualified individual" for purposes of the ADA at that time. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (whether an individual is "qualified" is determined as of the time of the adverse employment decision); *see also Barfield v. Donahoe*, 13 C 1518, 2014 WL 4638635, at *2 (N.D. Ill. Sept. 17, 2014) ("An employee who requires something less than extensive prospective leave at the time of her termination may be able to perform her essential job duties for ADA . . . purposes.").[4] It is not clear at this point that there *was* a reasonable accommodation that would have permitted Lake to perform the essential duties of his job as a slot technician, but Plaintiff should be given an opportunity to prove that there was.

Plaintiff should also be permitted to conduct discovery regarding Defendant's leave policy, and to explore whether other non-disabled slot technicians were provided more generous leave than Lake. Defendant believes that such evidence is irrelevant because, in Defendant's view, this case is solely about whether Lake's request for leave was a "reasonable accommodation" under the ADA. (R. 26, Def.'s Resp. at 5.) The Court does not read the complaint so narrowly. While the complaint is rather sparse, it alleges that Lake is disabled, that

---

[4] As Defendant points out, *Barfield* was decided before *Severson*. (R. 25, Def.'s Resp. at 12.) However, the Seventh Circuit's holding in *Severson* was essentially a reaffirmance of *Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir. 2003), which likewise held that an employee who needs extensive leave cannot be considered a qualified individual with a disability under the ADA. *See Severson*, 872 F.3d at 479 ("*Byrne* is sound and we reaffirm it[.]"). *Barfield* referenced *Byrne* but found it distinguishable. *See Barfield*, 2014 WL 4638635, at *5. In the Court's view, this case remains persuasive authority.

he took leave to obtain treatment for his disability, and that he was fired as a result.[5] (R. 1, Compl. ¶¶ 12-21.) A violation of the ADA can be established "by showing that the plaintiff was a qualified individual with a disability, and the defendant either failed to reasonably accommodate the plaintiff's disability *or intentionally discriminated against the plaintiff because of her disability.*" *Dadian*, 269 F.3d at 838 (emphasis added). In other words, assuming Plaintiff could clear the threshold hurdle of proving that Lake is a "qualified individual with a disability," Plaintiff could establish a violation of the ADA by showing that other non-disabled employees were granted more generous leave than Lake. *See Taylor-Novotny*, 772 F.3d at 489 (observing that a plaintiff can establish an ADA violation by showing that "similarly situated, non-disabled employees were treated more favorably"). Even *Severson* recognizes that disabled employees must be granted the same benefits as non-disabled employees. *See Severson*, 872 F.3d at 482 ("[I]f an employer has a policy of creating light-duty positions for employees who are occupationally injured, then that same benefit ordinarily must be extended to an employee with a disability . . . unless the company can show undue hardship.").

In short, Plaintiff must be permitted to conduct discovery before the Court considers Defendant's motion for summary judgment. Defendant's motion will be denied without prejudice. Defendant is free to renew its argument that Plaintiff's claim is defeated by *Severson*, along with any other argument it wishes to raise in support of summary judgment, after discovery is completed.

---

[5] To the extent Defendant believes that Plaintiff was required to spell out all its legal theories in the complaint, the Court disagrees. (R. 26, Def.'s Resp. at 4-5.) The Seventh Circuit has reiterated on several occasions that the requirements of notice pleading are quite minimal, and that the plaintiff need not plead "legal theories" to satisfy federal pleading requirements. *See, e.g., King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (observing that the Seventh Circuit has a "strong commitment to the idea that a plaintiff need not plead legal theories in her complaint"); *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("We have consistently held that plaintiffs are not required to plead legal theories.").

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for discovery (R. 25) is GRANTED. Defendant's motion for summary judgment (R. 16) is DENIED without prejudice. Defendant's motion to stay discovery pending a ruling on the motion for summary judgment (R. 21) is DENIED as moot. The parties shall appear for a status hearing on June 12, 2018, at 9:45 a.m. They are directed to reconsider their respective settlement positions in light of this ruling and to exhaust all efforts to settle this case.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: May 25, 2018**